**ERIKSON LAW GROUP**
David Alden Erikson (SBN 189838)
  david@daviderikson.com
S. Ryan Patterson (SBN 279474)
  ryan@daviderikson.com
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
Facsimile: 323.465.3177

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JASON WILLIAMS, an individual; VICTOR CHAPA, an individual; and JEFFREY RUBIN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERTO CAVALLI S.P.A., an Italian corporation; STAFF INTERNATIONAL S.P.A., an Italian corporation; STAFF USA, INC., a Delaware corporation; NORDSTROM, INC., a Washington corporation; AMAZON.COM, INC., a Delaware corporation; ZAPPOS, a Delaware corporation; YOOX, an Italian corporation; LUISA VIA ROMA, S.P.A., an Italian corporation; STYLEBOP USA, LLC, a Delaware limited liability company; and NEIMAN MARCUS GROUP LTD, LLC, a Delaware limited liability company; and DOES<br><br>Defendants. | Case No. 2:14-cv-06659<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR COPYRIGHT INFRINGEMENT, VIOLATION OF THE LANHAM ACT, UNFAIR COMPETITION, AND NEGLIGENCE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jason Williams ("Williams," or "Revok"), Victor Chapa ("Chapa," or "Reyes"), and Jeffrey Rubin ("Rubin," or "Steel"), collectively referred to as "Plaintiffs" or the "Artists," hereby complain against Defendants Roberto Cavalli S.p.A., Staff International S.p.A., Staff USA, Inc. (the "Cavalli Defendants"); and Nordstrom, Inc., Amazon.com, Inc., Zappos.com, Inc.,

1                                                                    FIRST AMENDED COMPLAINT FOR

YOOX, Luisa via Roma, S.p.A., Stylebop USA, LLC, and Neiman Marcus Group LTD, LLC (the "Retailer Defendants"); and Does 1-10 inclusive; (collectively referred to as "Defendants") as follows.

## SUMMARY OF THE CASE

1. Roberto Cavalli is among high fashion's most prominent names, with over 90 stores around the world, including on the premier shopping streets of every fashion capital. *Just Cavalli* is the brand's mass-market alter ego, available at brick-and-mortar stores like Nordstrom, online through retailers like Amazon and justcavalli.com, and through its own *Just Cavalli* stores in over a dozen countries including the United States.

2. In March of this year, *Just Cavalli* introduced a clothing and accessories collection in which every square inch of every piece (including clothing, bags, backpacks, and shoes) was adorned with graffiti art. That artwork, however, was taken from Plaintiffs without their consent.

3. Indeed, all the artwork of the so-called *Graffiti* collection was mechanically copied from a single authorized mural in San Francisco's Mission district—without the artists' knowledge or consent. The mural, pictured below, was the work of three acclaimed artists, known



2                    FIRST AMENDED COMPLAINT FOR

1 individually as Revok, Reyes and Steel. The Artists, who have exhibited at fine art galleries and
2 museums around the world, including locally at the Los Angeles Museum of Contemporary Art
3 (MOCA) and the Pasadena Museum of California Art, have never consented to lend their artwork
4 to mass-market consumer products of any kind.

5     4.    As one can easily discern, the *Just Cavalli* pieces shown below—like all the pieces
6 in the collection—borrow wholly from the mural.





17     5.    If this literal misappropriation was not bad enough, Cavalli sometimes chose to do
18 its own painting over that of the artists—superimposing the *Just Cavalli* name in spray-paint style
19 as if were part of the original work. Occasionally, Cavalli even added what appears to be a
20 signature, creating the false impression that Roberto Cavalli himself might be the artist.





3     FIRST AMENDED COMPLAINT FOR

6. Defendants ignored Plaintiffs' urgent demands (beginning in early June) that the Cavalli Defendants stop using their art, and despite documented protests, pieces could still be purchased months later as of the filing of Plaintiffs' initial complaint, including on the *Just Cavalli* website and on Amazon, and even remain available for purchase online today. This arrogant refusal to recognize Plaintiffs' unquestionable rights is no doubt a testament to the economic benefit wrongfully derived by Cavalli. In addition to sales revenue, Cavalli's numbers will show that the purported association with Plaintiffs has boosted the entire brand's popular appeal—as evidenced by the brand's extensive "advertorial" use of the art packaged as the *Just Cavalli* "Graffiti Girls" collection, including extensive traditional advertising and marketing media campaigns, spotlight features, and social media promotions.

7. But this same association that the Cavalli Defendants so value has, and will continue to, damage Plaintiffs' reputations and careers. Nothing is more antithetical to the outsider "street cred" that is essential to graffiti artists (indeed, the Pasadena Museum of California Art exhibition mentioned above was entitled "Street Cred") than association with extravagant European chic, luxury, and glamour—of which Cavalli is the epitome. To anyone who recognizes their work, Plaintiffs are now wide open to charges of "selling out."

8. Plaintiffs bring this straightforward copyright infringement claim for misappropriation of their artwork. Because the misappropriation included and exploited signature (i.e. source-identifying) elements that are recognized by the public as associated with one of the plaintiffs, he also bring trademark claims under the Lanham Act and state unfair competition law. And because Defendants removed or obscured the names of the other two plaintiffs, they bring claims under the Digital Millennium Copyright Act for falsification, removal and alteration of copyright management information, and related state law unfair competition claims.

**JURISDICTION AND VENUE**

9. Plaintiffs bring this action for copyright infringement (17 U.S.C. Section 101 et seq.); falsification, removal and alteration of copyright management information (17 U.S.C. § 1202); violation of Section 43(a) of Lanham Act (15 U.S.C. Section 1125(a)); unfair competition

4     FIRST AMENDED COMPLAINT FOR

under California law; and negligence.

10.     This Court has original subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. Section 1331 ("federal question jurisdiction") and 1338(a)-(b) ("patent, copyright, trademark and unfair competition jurisdiction") in that this action arises under the laws of the United States and, more specifically, Acts of Congress relating to patents, copyrights, trademarks, and unfair competition. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367(a)("supplemental jurisdiction") in that they are so related to the federal law intellectual property claims in the action that they form part of the same case or controversy under Article III of the United States Constitution.

11.     Defendants are subject to the personal jurisdiction of the Court because they do or transact business in, have agents in, or are otherwise found in and have purposely availed themselves of the privilege of doing business in California and in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(1)-(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District in that, inter alia, the clothing in question is and was offered for sale here.

## THE PARTIES

13.     Plaintiff Jason Williams is, and at all times relevant herein has been a resident of Los Angeles, California, and is a world-renowned artist, producing works under the pseudonym "Revok." Williams's work has been featured in high-profile museum exhibitions, including the groundbreaking 2011 show "Art in the Streets" at MOCA, and the "Street Cred" show at the Pasadena Museum of California Art, as well as numerous art galleries in Los Angeles, New York, Hamburg, and Dubai to name a few. In May of this year, *Made In Detroit*, a book chronicling Revok's recent work, was published by Gingko Press.

14.     Plaintiff Victor Chapa is, and at all times relevant herein has been a resident of San Francisco and is a world-renowned artist, producing works under the pseudonym "Reyes." Reyes's work has been featured in numerous art galleries in cities across the world, including New York, San Francisco, Tokyo, and Montreal. Reyes is perhaps most well known for his outdoor

murals, which were the subject of a 2010 cover story in the San Francisco Chronicle. An image of the story on the front page of the Chronicle article is attached as Exhibit A.

15. Plaintiff Jeffrey Rubin is, and at all times relevant herein has been a resident of San Francisco, and is a world-renowned artist, producing works under the pseudonym "Steel." Rubin's work has been featured in numerous gallery shows, including in Los Angeles and New York.

16. Defendant Roberto Cavalli S.p.A. is a famous high-fashion brand based in Milan, Italy. It sells at its own boutique stores around the world—including on Rodeo Drive in Beverly Hills, Madison Avenue in Manhattan, and Boulevard Montaigne and Rue St. Honoré in Paris—as well as through the world's highest-end department stores such as Bergdorf Goodman in New York, and Harrod's in London. The brand is also extremely popular in Asia, and especially in the Middle East. Earlier this year, the Company was valued at over $1 billion in conjunction with a pending acquisition. The Cavalli brand is of course closely associated with its founder, Roberto Cavalli, a resident of Italy. Mr. Cavalli has been an outspoken critic of "knocking off" in the fashion world, complaining loudly that his own work has been grossly misappropriated by his peers, and calling such copying "scandalous."

17. Defendant Staff International, S.p.A. ("Staff Intl.") is an Italian corporation. On information and belief, Staff Intl. produces and distributes clothing, shoes, and accessories under the "*Just Cavalli*" label as its licensee, as well as the labels of other prominent brands such as Maison Martin Margiela, Vivienne Westwood, and Marc Jacobs Men.

18. Defendant Staff USA, Inc. ("Staff USA") is a Delaware corporation. On information and belief, Staff USA is a subsidiary of Staff International, S.p.A., and distributes clothing, shoes, and accessories under the "*Just Cavalli*" label for sale in the United States. On information and belief, Staff USA operates the *Just Cavalli* store located in New York City.

19. Defendant Nordstrom, Inc. ("Nordstrom") is a Washington corporation. Nordstrom sells *Just Cavalli* labeled goods through its online store, www.nordstrom.com, and its brick-and-mortar retail stores throughout the United States, including multiple locations within California.

20. Defendant Amazon.com, Inc. ("Amazon") is a Delaware corporation. Amazon sells

*Just Cavalli* labeled goods through its online store www.amazon.com.

21. Defendant Zappos.com, Inc. ("Zappos") is a Delaware corporation. Zappos sells *Just Cavalli* labeled goods through its online store www.zappos.com.

22. Defendant YOOX is an Italian corporation. YOOX sells *Just Cavalli* labeled goods through its online store www.yoox.com. YOOX also operates the *Just Cavalli* online store, located at store.robertocavalli.com/justcavalli.

23. Defendant Luisa via Roma, S.p.A. ("Luisa via Roma") is an Italian corporation. Luisa via Roma sells *Just Cavalli* labeled goods through its website www.luisaviaroma.com.

24. Defendant Stylebop USA, LLC ("Stylebop") is a Delaware limited liability company. Stylebop sells *Just Cavalli* labeled goods through its website www.stylebop.com.

25. Defendant Neiman Marcus Group LTD, LLC ("Neiman Marcus") is a Delaware limited liability company. Neiman Marcus sells *Just Cavalli* labeled goods through its brick-and-mortar retail stores, including Neiman Marcus, Bergdorf Goodman, and Neiman Marcus Last Call; as well as through its websites www.neimanmarcus.com, www.bergdorfgoodman.com, www.lastcall.com, and www.cusp.com.

26. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities when the same has been ascertained. Plaintiffs are informed and believe, and thereon allege, that each fictitiously-named Defendant is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

27. Each of the Defendants acted as an agent for each of the other Defendants in doing the acts alleged and each Defendant ratified and otherwise adopted the acts and statements performed, made or carried out by the other Defendants so as to make them directly and vicariously liable to Plaintiffs for the conduct complained of herein. Each Defendant is the alter ego of each of the other Defendants.

7     FIRST AMENDED COMPLAINT FOR

## GENERAL ALLEGATIONS

28. In 2012, Revok, Reyes, and Steel were invited by a property owner to collaborate in creating a giant mural, covering the broad side of a building in San Francisco's Mission District (the "Mural"). As is not uncommon in graffiti art, much of the Mural consisted of the signatures of Revok, and Steel—stylized renditions of their art pseudonyms. Those signatures appeared on a background of Reyes' signature "revolutions" imagery, which is reminiscent of swirling ocean waves. All of these "signature" elements—the literal signatures and the stylized revolutions—have "secondary meaning" as that term is used in trademark law. That is, they are recognized by members of the public and consumers as being associated with the respective Plaintiff. Such consumers have come to understand that goods bearing the signature elements are produced by and associated with the respective Plaintiff.

29. Due to its artistic merit and the Artists' prominent reputations, the Mural attracted a great deal of positive attention in the art community. Reviews were universally positive.

30. For the Spring/Summer 2014 season, Just Cavalli released a capsule collection (the "Collection"), featuring textile designs (the "Designs") made up entirely of misappropriated and unauthorized literal images of the Mural. The Designs covered the entirety of each of the Collection's thirty-plus unique pieces, including clothing, bags, backpacks, and even shoes. Attached as Exhibit B is a partial collection of images of the *Just Cavalli* garments featuring the misappropriated images—some of them with comparisons to the Mural. To add insult to injury, the artwork misappropriated by the Cavalli Defendants included Reyes' Signature elements from the Mural including their literal names—giving new meaning to the idea of appropriating an artist's signature style. While Reyes' revolutions are visible and fully recognizable in the pieces of the Collection, the signatures of Revok and Steel are chopped and rearranged to such an extent that they are not recognizable.

31. On information and belief, the images used in the Collection were mechanical copies of the Mural, obtained and produced through the use of high-resolution photography. Indeed, Mr. Cavalli himself is an unabashed fan of graffiti art, and has spoken on his personal blog

1  about his practice of painstakingly photographing it on the streets.

2      32.    While every portion of the Designs is a mechanical copy of the Mural, Defendants added certain of their own material over the Mural artwork. Needless to say, Plaintiffs consider these embellishments to constitute a defacement. One prominent such embellishment is the inclusion of the brand name "*Just Cavalli*," made to appear as if it were part of the original work, and arguably giving the impression that the work was created for *Just Cavalli*. Similarly, for whatever reason, Defendants took the liberty of rearranging some of the elements of the Mural for inclusion on their apparel—again amounting to defacement (and obscuring the signatures of Revok and Steel). To the similar effect, and in addition to the wrongs enumerated above, Mr. Cavalli appears to sign a few of the Designs (although what appears to be a signature actually reads "*Just Cavalli*"), amounting to a false representation that he rather than Plaintiffs was the creator. Nowhere is credit or attribution given to Plaintiffs.

    33.    The Collection was sold extensively throughout the world through the *Just Cavalli* stores and website, as well as through more than four hundred third-party retailers, including Defendants Nordstrom, Amazon, Zappos, YOOX, Luisa via Roma, Stylebop, and Neiman Marcus.

    34.    Upon discovery of Defendants' misappropriation of the their work, Plaintiffs urgently demanded that the Cavalli Defendants cease their use, and remove the offending items from the marketplace. Despite assurances of cooperation and repeated requests for more time to respond (based in part on the assertion that remedial action is impossible because Italians are "on vacation" in August), the infringing items were still widely available when the initial complaint was filed—including on Amazon and even the *Just Cavalli* ecommerce website, and remain available online today.

    35.    Defendants benefitted from the misappropriation and infringement in several ways, including but not limited to the following: (i) they enjoyed the revenue and increased revenue from the sale and/or license of the offending goods, and (ii) the success of the Collection increased the value of the *Roberto Cavalli* brand and its *Just Cavalli* diffusion brand. In this latter regard,

Defendant Staff Intl. recently re-licensed the *Just Cavalli* brand on terms favorable to licensor Roberto Cavalli S.p.A , due in part to such success. In addition, Defendant Roberto Cavalli S.p.A is in the process of being acquired on favorable terms, due in part to such success.

36. Plaintiffs have been harmed by the misappropriation and infringement described above in several ways, including but not limited to damage to their reputations and credibility in the art world based upon their perceived association with and endorsement of the Cavalli brands. In this latter regard, Plaintiffs are diligent in controlling distribution channels of their work, because such channels greatly affect an artist's reputation and the overall market for an artist's work. Plaintiffs do not make their art available on the internet or in retail stores, and like their target audience, they eschew any connection to mass-market commercial consumerism. Rather they sell original art pieces (for prices in the range of $50,000) and limited edition prints.

37. Plaintiffs are informed and believe, and thereon allege, that Defendants' alleged conduct was, and continues to be, intentional, deliberate, willful, wanton, committed with the intention of injuring Plaintiffs, and depriving them of their legal rights; was, and is, despicable conduct that subjects Plaintiffs to a cruel and unjust hardship; and was, and continues to be, undertaken with oppression, fraud and malice. Accordingly, Plaintiffs are entitled to an award of punitive or exemplary damages.

38. Defendants' actions have caused, and will continue to cause, damage and irreparable harm to Plaintiffs (as described above) and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiffs, unless preliminarily and permanently enjoined and restrained by the Court.

**First Claim For Relief For Copyright Infringement**

**(By All Plaintiffs, Against All Defendants)**

39. Plaintiffs incorporate herein by this reference paragraphs 1 through 38 as if set forth in full in this cause of action.

40. The Mural is an original work of authorship and constitutes copyrightable subject matter under the laws of the United States. The image was fixed in a tangible medium of

10   FIRST AMENDED COMPLAINT FOR

expression, as described above.

41. At all times since the creation of the Mural, Plaintiffs have complied with all aspects of the Copyright Acts of 1909 and 1976 and all other laws governing copyright, and secured the exclusive rights and privileges in and to the Mural. Plaintiffs have at all times been the co-owners of all rights, title, and interest in and to the copyright in the Mural, and have applied for a federal registration from the Register of Copyrights, dated June 5, 2014. The deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form.

42. Subsequent to Plaintiffs' publication of the Mural and (on information and belief) with full knowledge of the rights of Plaintiffs therein, the Cavalli Defendants infringed Plaintiffs' copyright by copying, as described above, the artwork and placing such copied images on *Just Cavalli* apparel, and by selling such apparel in California, elsewhere in the United States, and abroad.

43. The Retailer Defendants have infringed by selling the infringing *Just Cavalli* goods in stores and/or online.

44. All of Defendants' acts were performed without the permission, license or consent of Plaintiffs.

45. By reason of Defendants' acts of copyright infringement as alleged herein, Plaintiffs have suffered and will continue to suffer substantial damage to their business in the form of diversion of trade, loss of profits, and a dilution in the value of their rights and reputations, in part as described above, all in amounts that are not yet ascertainable but not less than the jurisdictional minimum of this court.

46. By reason of their infringement of Plaintiffs' copyright as alleged herein, Defendants are liable to Plaintiffs for the actual damages incurred by Plaintiffs as a result of the infringement, and for any profits of Defendants directly or indirectly attributable to such infringement.

**Second Claim For Relief For Falsification, Removal and Alteration of Copyright Management Information in Violation of 17 U.S.C. § 1202**

**(By Jason Williams and Jeffrey Rubin, Against Cavalli Defendants)**

47.     Plaintiffs incorporate herein by this reference paragraphs 1 through 46 as if set forth in full in this cause of action.

48.     The Mural contained copyright management information protected under 17 U.S.C. § 1202(b).

49.     Defendants intentionally removed the copyright management information with the intent to induce, enable, facilitate, or conceal an infringement of Plaintiffs' rights under the Copyright Act. On some of the infringing pieces, Defendants have replaced such information with false, altered and inaccurate copyright management information, which falsely identifies one or more Defendants, or another person or entity, that has no copyright ownership interest as the owner of copyright in the work.

50.     Defendants' conduct violates 17 U.S.C. § 1202(b).

51.     Defendants' falsification, removal and alteration of that copyright management information was made without the knowledge or authority of the Artists.

52.     The falsification of said copyright management information was made by Defendants intentionally, knowingly and with the intent to induce, enable, facilitate, or conceal Defendants' infringement of Plaintiffs' copyright in the Mural. Defendants also knew, or had reason to know, that such removal and alteration of copyright management information would induce, enable, facilitate, or conceal Defendants' infringement of Plaintiffs' copyright in the Mural.

53.     Plaintiffs have sustained significant injury and monetary damages as a result of Defendants' wrongful acts as hereinabove alleged, and as a result of being involuntarily associated with low-quality merchandise. Plaintiffs are at present unable to ascertain the full extent of the monetary damages they have suffered by reason of said acts. In order to determine the full extent of such damages, including such profits of Defendants as may be recoverable under 17 U.S.C. §

1203, Plaintiffs will require an accounting from each Defendant of all monies generated from their wrongful falsification, removal and alteration of copyright management information.

54. In the alternative, Plaintiffs may elect to recover statutory damages pursuant to 17 U.S.C. § 1203(c)(3) in a sum of not more than $25,000 from each Defendant for each violation of 17 U.S.C. § 1202.

### Third Claim For Relief for Unfair Competition Under Section 43(a) of
### The Lanham Act (15 U.S.C. § 1125(a))
### (By Victor Chapa, Against All Defendants)

55. Plaintiffs incorporate herein by this reference paragraphs 1 through 54 as if set forth in full in this cause of action.

56. The Mural, including the portions misappropriated by Defendants, contains signature elements of Plaintiff Reyes' artwork. Members of the public, including art world consumers and insiders, as well as the art press, have come to recognize Reyes' signature elements as belonging to Chapa. Such elements are referred to collectively herein as the "Reyes Signature Elements."

57. The Reyes Signature Elements (among other things) including the revolutions describes above work as a sort of product packaging or logo, which enables the public to identify Reyes' work. In other words, the Reyes Signature Elements have secondary meaning.

58. The goodwill and reputation associated with the Reyes Signature Elements has continuously grown throughout the general public. The Reyes Signature Elements are now well known throughout the United States and the State of California as a source of origin for Reyes' artistic product.

59. Chapa has spent substantial resources successfully establishing the Reyes Signature Elements and names in the minds of consumers as a high quality product.

60. The Reyes Signature Elements and all individual elements thereof are strong, fanciful, non-functional and distinctive, and inherently distinctive. Through Chapa's efforts in exhibiting his work, the Reyes Signature Elements have become distinctive of his artwork, and

acquired secondary meaning among relevant consumers and the public generally.

61. As alleged above, Defendants produced and/or sold garments in interstate commerce that feature and include the Reyes Signature Elements (most pieces of the Collection include all of the signature elements described above).

62. Defendants' use of the Reyes Signature Elements is designed to create and does create the false and deceptive commercial impression that the *Just Cavalli* garments and accessories are associated with and/or manufactured by Reyes and Plaintiffs. The use by Defendants of the Reyes Signature Elements or any portion thereof is likely to cause confusion or mistake or deception of purchasers as to the source of the goods.

63. Customers and potential purchasers are likely to be attracted to the *Just Cavalli* pieces described herein, creating an initial interest in the goods upon seeing them and creating a lasting appreciation, causing the belief that they are associated with Plaintiffs, thereby resulting in consumer confusion. Defendants' conduct will damage Chapa's ability to enjoy, maintain and exploit his hard-won brand-recognition and status as an art leader.

64. Although he maintains the highest standards of quality, and specifically does not offer his images for sale on mass-market clothing articles or other mass-produced consumer goods, Chapa has no control over the type or quality of the goods provided by the Defendants. Goods of low quality, if associated with Chapa, will certainly damage his reputation.

65. In addition, Defendants' use of the Reyes Signature Elements harms their distinctiveness by associating it with clothing items associated with low-cost and discount marketing, and diminishes Chapa's ability to connote a single source of his artwork.

66. By Defendants' conduct alleged here, Defendants have wrongfully appropriated for themselves business and goodwill value that properly belongs to Chapa and that Chapa has invested time, money, and energy in developing.

67. Defendants' unlicensed, unconsented to, and otherwise unauthorized use of Chapa's graphical, thematic, and other signature source-identifying elements of the Reyes Signature Elements constitutes a false representation that wrongly suggests to the trade, relevant

14 FIRST AMENDED COMPLAINT FOR

purchasing public, and consumers at large, that Chapa is the source or manufacturer of, or endorses or approves of, Defendants' goods.

68. By reason of Defendants' acts of unfair competition as alleged herein, Chapa has suffered and will continue to suffer substantial damage to his business in the form of diversion of trade, loss of profits, and a dilution in the value of his rights and reputation, all in amounts which are not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this court.

69. By virtue of Defendants' acts hereinabove described, Defendants have committed, and are continuing to commit, unlawful, unfair, and fraudulent business acts in violation of, inter alia, 15 U.S.C. § 1125(a).

70. Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a) have caused, and will continue to cause, damage and irreparable harm to Plaintiffs (as described above) and are likely to continue unabated, thereby causing further damage and irreparable harm to Chapa, and to the goodwill associated with Plaintiffs' valuable and well-known trade dress and Chapa's business relationships, unless preliminarily and permanently enjoined and restrained by the Court.

71. Chapa has no adequate remedy at law and will suffer irreparable injury if Defendants are allowed to continue to wrongfully continue the conduct herein described.

72. In committing these acts of unfair competition, Defendants acted willfully, wantonly, and recklessly; and with conscious disregard for Plaintiff Chapa's rights. Chapa is therefore entitled to punitive damages.

**Fourth Claim For Relief for Unfair Competition Under**

**California Business And Professions Code §§ 17200 et seq.**

**(By All Plaintiffs, Against All Defendants)**

73. Plaintiffs incorporate herein by this reference paragraphs 1 through 72 as if set forth in full in this cause of action.

74. Defendants, by means of the conduct above, have engaged in, and are engaging in,

15     FIRST AMENDED COMPLAINT FOR

unlawful, unfair, fraudulent and deceptive business practices under California Business and Professions Code §§ 17200 through 17203. These acts and practices undertaken by Defendants violate California Business & Professions Code § 17200 in that they are—as described above—unfair, fraudulent, and/or unlawful. Specifically, without limiting the generality of the foregoing, such acts and practices constitute violations of copyright laws and the Lanham Act as alleged above, and are and were fraudulent in that: (a) Defendants seek to deceive consumers regarding the source, quality and origin of Defendants' goods and Defendants' association with Plaintiffs, and (b) the general public and trade is likely to be confused regarding the business relationship between Plaintiffs and Defendants. Further, without limiting the generality of the foregoing, the harm to Plaintiffs and to members of the general public far outweighs the utility of Defendants' practices and, consequently, Defendants' practices constitute an unfair business act or practice within the meaning of Business and Professions Code § 17200.

75. Plaintiffs have sustained, and will continue to sustain, serious and irreparable injury to their business and reputation, as a direct and proximate result of Defendants' conduct (as described above). Unless Defendants are enjoined by this Court, there is a substantial possibility that they will continue to engage in such unlawful, unfair, and deceptive business practices, for which Plaintiffs are without an adequate remedy at law. Accordingly, Plaintiffs are entitled to a preliminary injunction and permanent injunction against Defendants and their officers, directors, employees, agents, representatives, affiliates, subsidiaries, distributors, and all persons acting in concert with them, prohibiting them from engaging in further unlawful, unfair and/or fraudulent business practices.

76. As a direct result of Defendants' unlawful, unfair, fraudulent, and deceptive business practices, Defendants have received, and continue to receive, income and profits that they would not have earned but for their unlawful, unfair, and deceptive conduct and Plaintiffs are entitled to disgorgement of such funds wrongfully obtained.

77. By reason of Defendants' acts of unfair competition as alleged herein, Plaintiffs have suffered and will continue to suffer substantial damage to their business in the form of

diversion of trade, loss of profits, and a dilution in the value of their rights and reputation, all in amounts which are not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this court.

78. Plaintiffs are also entitled under the provisions of Business and Professions Code §17208 to an injunction prohibiting Defendants, and each of them, from engaging in any act, directly or indirectly, which constitute unlawful, unfair, and deceptive business practices.

79. In committing these acts of unfair competition, Defendants acted willfully, wantonly, and recklessly; and with conscious disregard for Plaintiffs' rights. Plaintiffs are therefore entitled to punitive damages.

80. Defendants' conduct, if allowed to proceed and continue and/or let stand, will cause irreparable damage to Plaintiffs' valuable business relationships and consumer relations and will require Plaintiffs to undertake efforts to mitigate damage to such relations, all to Plaintiffs' detriment. Further, such mitigation costs will require substantial time, effort, and expenditures by Plaintiffs, all to Plaintiffs' detriment.

**Fifth Claim For Relief For Unfair Competition Under**

**California Common Law**

**(By Victor Chapa, Against All Defendants)**

81. Plaintiffs incorporate herein by this reference paragraphs 1 through 80 as if set forth in full in this cause of action.

82. The above-described conduct of Defendants constitutes unfair competition under the common law of the State of California.

83. As a result of the actions of Defendants, Chapa has been damaged in an amount to be proven at trial.

**Sixth Claim For Relief For Negligence**

**(By All Plaintiffs, Against All Defendants)**

84. Plaintiffs incorporate herein by this reference paragraphs 1 through 83 as if set forth in full in this cause of action.

17     FIRST AMENDED COMPLAINT FOR

85. Defendants, and each of them, owed a duty of care to Plaintiffs, as described above.

86. Defendants breached their duty of care to Plaintiffs, and failed to exercise reasonable care in that, among other things, they failed to prevent injurious falsehoods from reaching the public.

87. As a proximate result of Defendants' negligence, Plaintiffs have been damaged in an amount to be proven at trial but exceeding the jurisdictional minimum of this Court.

**PRAYER**

WHEREFORE, Plaintiffs pray judgment against Defendants as follows:

1. That Plaintiffs be awarded all damages, including future damages, that Plaintiffs have sustained, or will sustain, as a result of the acts complained of herein, subject to proof at trial;

2. That Plaintiffs be awarded their costs, attorneys' fees and expenses in this action;

3. That Plaintiffs be awarded pre-judgment interest;

4. For an order permanently enjoining Defendants and their employees, agents, servants, attorneys, representatives, successors, and assigns, and any and all persons in active concert or participation with any of them, from engaging in the misconduct referenced herein;

5. That Defendants be ordered to immediately recall and sequester inventories of the infringing products, and to supply an accounting of such inventories to Plaintiffs' counsel;

6. That Defendants be ordered to deliver their entire inventories of infringing products to a mutually selected third party for supervised destruction;

7. That Defendants be ordered to file with this Court and serve upon Plaintiffs' counsel within thirty (30) days after services of the judgment demanded herein, a written report under oath setting forth in detail the manner in which they have complied with the judgment;

8. That Defendants be ordered to have engaged in unlawful, unfair and/or fraudulent business practices and unfair competition in violation of California Business and Profession Code §§ 17200 et seq.;

9. For disgorgement of all proceeds, and restitution of the moneys wrongfully received by Defendants as the result of their wrongful conduct, including copyright and trade dress

infringement, and unlawful, unfair, and deceptive business practices;

10. For punitive damages in an amount sufficient to deter Defendants, and each of them, from their wrongful conduct; and

11. That Plaintiffs have such other and further relief as the Court may deem appropriate.

DATED: November 10, 2014           ERIKSON LAW GROUP


By:      /s/
   David Alden Erikson
   Attorneys for Plaintiffs JASON WILLIAMS,
   VICTOR CHAPA, and JEFFREY RUBIN

19          FIRST AMENDED COMPLAINT FOR

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on their claims on all issues triable by a jury.

DATED: August 25, 2014          ERIKSON LAW GROUP

                                By:  /s/
                                     David Alden Erikson
                                     Attorneys for Plaintiffs JASON WILLIAMS,
                                     VICTOR CHAPA, and JEFFREY RUBIN