UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 14-06659-AB (JEMx) | Date: | February 12, 2015 |
|---|---|---|---|

| Title: | *Jason Williams, et al. v. Roberto Cavalli S.p.A., et al.* |
|---|---|

Present: The Honorable   ANDRÉ BIROTTE JR.

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**       **[In Chambers] Order DENYING Defendants' Motion to Dismiss (Dkt. No. 48.)**

Plaintiffs Jason Williams, Victor Chapa, and Jeffrey Rubin (collectively, "Plaintiffs") filed a first amended complaint ("FAC," Dkt. No. 43) against producers and distributors of *Just Cavalli* clothing (collectively, "Defendants"), alleging copyright infringement (first cause of action), removal and alteration of copyright information (second cause of action), unfair competition (third, fourth, and fifth causes of action), and negligence (sixth cause of action). On December 2, 2014, defendants Staff USA, Inc., Nordstrom, Inc., Amazon.com, Inc., and Zappos.com, Inc. (collectively, "Moving Defendants") moved to dismiss Plaintiffs' second, third, fourth, and fifth causes of action.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' allegations are as follows. Plaintiffs are well-known and respected graffiti artists. (FAC ¶ 3.) In 2012, Plaintiffs created a mural in San Francisco. (FAC ¶ 28.) The mural contained signature elements that identified Plaintiffs as the creators of the mural. (*Id.*) The mural depicted the stylized signatures of "Revok" and "Steel," pseudonyms commonly associated with plaintiffs Williams and Rubin, respectively. (*Id.*) The signatures appear on a background of "revolutions" imagery, which is publicly

recognized as plaintiff Chapa's signature style.  (*Id.*)

Defendants used high-resolution photography to obtain images of the mural and placed the images on a collection of *Just Cavalli* clothing (the "Collection").  (FAC ¶ 31.)  In designing the Collection, Defendants left Chapa's "revolutions" imagery intact, but rearranged the "Revok" and "Steel" signatures, rendering them indiscernible in the resulting clothing.  (FAC ¶ 30.)  On some of the items in the Collection, the brand name "Just Cavalli" was superimposed over images of Plaintiffs' mural.  (FAC ¶ 32.)  Plaintiffs contend that Defendants' conduct was intentionally designed to "induce, enable, facilitate, or conceal" the infringement.  (FAC ¶ 49.)  Items from the Collection have been sold in various retail outlets around the world.  (FAC ¶ 33.)

On June 5, 2014, Plaintiffs applied for federal copyright registration of the mural.  (FAC ¶ 41.)  Upon learning of the Collection, Plaintiffs demanded that Defendants cease using images of the mural and remove Collection items from the marketplace.  (FAC ¶ 34.)  Plaintiffs complain that Defendants have profited from their use of Plaintiffs' mural.  (FAC ¶ 35.)  Additionally, Plaintiffs complain that Defendants' use of their artwork has damaged Plaintiffs' reputation and credibility.  (FAC ¶ 36.)

Based on these allegations, Plaintiffs assert causes of action under federal copyright law, 17 U.S.C. § 1202, federal and state unfair competition law, and common law.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Complaint must also be "plausible on its face," allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on the motion, "a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Motion to Dismiss Second Cause of Action – Removal and Alteration of Copyright Management Information in Violation of 17 U.S.C. § 1202

Plaintiffs Williams and Rubin allege that defendants Roberto Cavalli, S.p.A., Staff USA, Inc., and Staff International, S.p.A. ("Cavalli Defendants") violated 17 U.S.C. § 1202 by removing and altering the "Revok" and "Steel" signatures from images of the mural when the images were placed onto items in the Collection.  (FAC ¶¶ 30, 49.)  Of the Cavalli Defendants, only Staff USA, Inc., is a party to this Motion to Dismiss.

17 U.S.C. § 1202(b) prohibits the intentional removal or alteration of any copyright management information ("CMI") with knowledge that doing so "will induce, enable, facilitate, or conceal" copyright infringement.  Information constitutes CMI when it (1) falls into one of the eight categories of information listed in § 1202(c)(1-8) and (2) is "conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form…" 17 U.S.C. § 1202(c).

One of the eight categories of information listed in § 1202(c) is "the name of, and other identifying information about, the author of a work".  17 U.S.C. § 1202(c)(2).  Plaintiffs allege that the mural contained the signatures of "Revok" and "Steel," pseudonyms that the public associates with Williams and Rubin, respectively.  (FAC ¶ 28.)  Taking Plaintiffs' allegations as true, the signatures identified Williams and Rubin as authors of the mural.  Moving Defendants contend that the signatures do not constitute CMI because "Section 1202 does not protect signatures."  (Defs.' Mot. at 8.)  Moving Defendants cite no authority for their proposition that a signature cannot constitute CMI.  Indeed, a signature seems to be the exact type of information that would identify the author of a work.  As alleged, the "Revok" and "Steel" signatures widely identify Williams and Rubin as authors of the mural, and the signatures fall within the scope § 1202(c)(2).  *See, e.g., Tylor v. Rhythm of Life Cosmetics, Inc.*, No. 13-00280 DKW-KSC, 2014 WL 253012, at *3 (D. Hawai'I Jan. 23, 2014) (photographer's signature in at bottom corner of photographs constituted CMI); *see also Garnder v. CafePress, Inc.*, No. 3:14-cv-0792-GPC-JLB, 2014 WL 7183704, at *4 (discussing argument that the defendant "altered CMI in the form of Plaintiff's name or signature").

Plaintiffs properly allege that the signatures were conveyed in connection with the display of their mural.  The signatures appeared in the mural itself. (FAC ¶ 28.)  If the signatures were part of the mural, they necessarily were conveyed in connection with the display of the mural.  Since Plaintiffs allege that the signatures fall into § 1202(c)(2) and were conveyed in connection with the mural, Plaintiffs adequately claim that the signatures constitute CMI.

Moving Defendants contend that the signatures are not CMI, rendering § 1202 inapplicable. (Defs.' Mot., Dkt. No. 48 at 6.)  They suggest that the Court should look beyond the statutory text to the legislative purpose behind § 1202.  (Defs.' Mot. at 7.)  They point out that the Digital Millennium Copyright Act ("DMCA"), of which § 1202 was a part, was targeted at digital copyright issues.  (Defs.' Mot. at 6.)  Thus, they argue, some technological process must have been used in placing or removing the signatures for § 1202 to apply.  (Defs.' Mot. at 7.)  In support of their position, Moving Defendants cite two cases, *I.Q. Grp. V. Weisner*, 409 F. Supp. 2d 587, 597 (D.N.J. 2006) (reviewing legislative history and finding § 1202 applicable only when the removed information "function[s] as a component of an automated copyright protection or management system") and *Textile Secrets Int'l v. Ya-Ya Brands, Inc.*, 524 F. Supp. 2d 1184, 1201-1202 (C.D. Cal 2007) (analyzing § 1202's legislative history and finding it inapplicable unless some technological process was used either in placing or in removing copyright information).  (Defs.' Mot. at 6-7.)  Since Plaintiffs do not allege that a technological process was used in the creation or removal of the signatures, Moving Defendants claim that § 1202 does not apply.  (Defs.' Mot. at 6.)

Moving Defendants' reliance on *IQ Group* and *Textile Secrets* does not withstand further inquiry.  *IQ Group*'s holding has since been rejected by the Third Circuit in *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) (finding that a "gutter credit" next to the plaintiff's photograph constituted CMI even though it was not part of an automated copyright protection or management system).  While *Textile Secrets* has not been contemplated by the Ninth Circuit, a more recent Central District of California opinion came to the opposite conclusion.  *Fox v. Hildebrand*, 2009 WL 1977996, at *2-3 (C.D. Cal. 2009) (finding that a handwritten copyright notice on architectural renderings constituted CMI even though it was not in digital form).  Many other recent decisions reject the proposition that CMI is limited to information created or removed through a technological process.  *See*, *e.g.*, *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1101 (N.D. Ill. 2014) (finding no requirement that CMI be digital or connected to internet commerce); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 306 (S.D.N.Y. 2011) (explicitly declining to follow *IQ Group* in light of the plain meaning of § 1202); *Interplan Architect, Inc. v. C.L. Thomas, Inc.*, 2009 WL 6443117, at *5 (S.D. Tex. 2009) (finding no textual support for the proposition that § 1202 is limited technological processes).

Moreover, the Court finds the *Murphy* and *Fox* decisions persuasive as a matter of statutory interpretation.  When a statutory text is clear, a court should not resort to legislative history.  *Ratzlaf v. U.S.*, 510 U.S. 135, 147-148 (1994).  The plain meaning of § 1202 indicates that CMI can include non-digital copyright information.  Nowhere in § 1202 does the text limit the definition of CMI to digital information.  In fact, § 1202(c) defines CMI as information listed in § 1202(c)(1-8), "including in digital form."  If

information needed to be in digital form for § 1202 to apply, the language "including in digital form" would be entirely superfluous. Courts avoid reading statutes in a manner that will render statutory language superfluous. *Astoria Fed. Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991).

Moving Defendants argue that, even if the signatures constitute CMI, Plaintiffs' allegations are inadequate because "Plaintiffs fail to identify which two Plaintiffs [*sic*] names were removed." (Defs.' Mot. at 8.) A cursory glance at the FAC reveals that Plaintiffs identified Williams and Rubin as the artists whose names were removed. Plaintiffs allege that "the signatures of Revok and Steel are chopped and rearranged to such an extent that they are not recognizable" in Collection items. (FAC ¶ 30.) Elsewhere in the FAC, Plaintiffs identify Williams and Rubin as artists who produce works under the pseudonyms "Revok" and Steel," respectively. (FAC ¶¶ 13, 15.) The FAC adequately identifies Williams and Rubin as the artists whose signatures were removed.

Lastly, Moving Defendants claim that Plaintiffs fail to allege the signatures were altered or removed. (Defs.' Mot. at 9.) Moving Defendants argue that, since Plaintiffs allege the Cavalli Defendants copied literal images of the mural, they cannot also claim that they altered the mural. (*Id.*) Moving Defendants mischaracterize Plaintiffs' allegations. Plaintiffs allege that, "[w]hile Reyes' revolutions are fully recognizable in the pieces of the Collection, the signatures of Revok and Steel are chopped and rearranged to such an extent that they are not recognizable." (FAC ¶ 30.) In other words, Plaintiffs allege the Cavalli Defendants copied the mural, but omitted portions of the mural that identified Williams and Rubin as authors, and adequately allege the Cavalli Defendants removed or altered the "Revok" and "Steel" signatures.

For the foregoing reasons, Plaintiffs satisfactorily allege that the "Revok" and "Steel" signatures constitute CMI and that the Cavalli Defendants intentionally removed the signatures to aid their infringement. Thus, the Court **DENIES** Moving Defendants' Motion to Dismiss Plaintiffs' second cause of action.

## B.  Motion to Dismiss Third Cause of Action – Unfair Competition Under § 43(a) of the Lanham Act

Plaintiff Chapa alleges that Defendants violated § 43(a) of the Lanham Act by using Chapa's signature "revolutions" imagery in Collection items. (FAC ¶ 69.) Section 43(a) prohibits producers of consumer goods from using a "false designation of origin" that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). Chapa alleges that his "revolutions" imagery functions as

a "product packaging or logo." (FAC ¶ 57.) Thus, Chapa contends, Defendants' use of his "revolutions" imagery is a false designation of origin likely to cause consumer confusion. (FAC ¶ 62.)

Moving Defendants claim that the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), precludes Chapa's Lanham Act claim. (Defs.' Mot. at 9-11.) In *Dastar*, the defendant copied and edited the plaintiff's video series and sold it under its own name. *Id.* at 26-27. According to the plaintiff, this constituted "reverse passing off" because the defendant sold another's work under its own name. *Id.* at 27. Reverse passing off occurs when "[a] producer misrepresents someone else's goods or services as his own." *Id.* at n.1. Passing off, on the other hand, "occurs when a producer misrepresents his own goods or services as someone else's." *Id.* Even though the plaintiff alleged reverse passing off, the Court held that the plaintiff could not recover on its Lanham Act claim. *Id.* at 38. The Court reasoned that when § 43(a) of the Lanham Act refers to a "false designation of origin," it means a false designation of the producer or manufacturer of the tangible goods, not the source of the communication embodied in the work. *Id.* at 37. Since the plaintiff was the physical producer of the videotapes and labeled the tapes as such, the plaintiff's conduct caused no confusion about the "origin" of the videotapes. *Id.* at 38. The Court explained that the Lanham Act is not designed to reward innovation, but rather to reduce consumer costs by preventing competitors from copying "a source-identifying mark." *Id.* at 34. Thus, after *Dastar*, a plaintiff cannot succeed in bringing a Lanham Act claim for reverse passing off solely by alleging that a defendant appropriated the plaintiff's communicative content without accreditation.

Moving Defendants contend that Chapa's Lanham Act claim is precluded because it alleges the kind of reverse passing off at issue in *Dastar*. (Defs.' Mot. at 11.) However, the facts alleged in Chapa's Lanham Act claim establish passing off, not reverse passing off. Chapa alleges that Defendants' use of his "revolutions" imagery created the "false and deceptive impression that the *Just Cavalli* garments and accessories are associated with and/or manufactured by [Chapa] and Plaintiffs." (FAC ¶ 62.) Thus, Chapa claims that Defendants sold their own products using his source-identifying imagery. This conduct constitutes passing off, which occurs when a producer sells its own goods while misrepresenting that they were made by another. Since Chapa alleges passing off, rather than reverse passing off, *Dastar* does not preclude Chapa's Lanham Act claim.

Moving Defendants also argue that Chapa's Lanham Act cannot succeed because Plaintiffs' copyright claim and Chapa's Lanham Act claim seek to protect the same design. (Defs.' Reply, Dkt. No. 50 at 6.) Moving Defendants point to no authority that supports their proposition that a design may not be protected by both the Lanham Act and

copyright law.  In fact, caselaw supports to the opposite conclusion.  For example, in *Bach v. Forever Living Products U.S., Inc.*, 473 F. Supp. 2d 1110, 1114 (W.D. Wash. 2007), creators of a popular book brought both a copyright infringement claim and a Lanham Act claim alleging, among other things, that the defendant used  an image from the front cover of their book as its corporate logo.  The plaintiffs claimed that the cover was an original design protected by copyright law.  *Id.* at 1118.  They also claimed that the design on the cover functioned as a trade dress that identified them as the creators of the book.  *Id.*  The court agreed.  *Id.*  While the copyright claim and the Lanham Act claim referred to the same facts, the two claims addressed distinct wrongs.  *Id.*  The copyright claim protected the plaintiffs' creative work, and the Lanham Act claim protected the plaintiffs' rights in their source-identifying trade dress.  *Id.*  The Court is persuaded by *Bach*'s finding that a defendant can simultaneously violate the Lanham Act and copyright law.  *See also*, *Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) (finding that the defendant violated both copyright law and the Lanham Act when he copied the plaintiff's videogames and misrepresented that his copies were produced by the plaintiff); *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 979 (N.D. Cal. 2013) (finding both a Lanham Act claim and a copyright claim proper when the defendant reproduced the plaintiff's copyrighted ads, within which the plaintiff's trademark appeared).

As noted by Moving Defendants, Plaintiffs claim that the mural is an original work protected by copyright law.  (FAC ¶ 40.)  However, Chapa also claims that the "revolutions" imagery within the mural identified him as a creator of the mural.  (FAC ¶¶ 28, 58.)  When Defendants placed images of the mural onto items in the Collection, they not only appropriated Plaintiffs' copyrighted mural, but also used Chapa's source-identifying imagery.  Thus, like in *Bach*, Defendants' one act of copying simultaneously infringed on Plaintiffs' copyright and Chapa's source-identifying product design.

Because Chapa adequately alleges that Defendants violated § 43(a) of the Lanham Act by producing and selling Collection items containing Chapa's source-identifying imagery, the Court **DENIES** Moving Defendants' Motion to Dismiss Plaintiffs' third cause of action.

### C. Motion to Dismiss Plaintiffs' Fourth and Fifth Causes of Action – Unfair Competition Under Cal. Bus. & Prof. Code §§ 17200 *et seq.*  and California Common Law

Based on the allegations set forth in Chapa's Lanham Act claim, Plaintiffs claim that Defendants engaged in unfair competition in violation of Cal.Bus. & Prof.Code §§ 17200 *et seq.* and California common law.

Moving Defendants once again argue that Plaintiffs allege reverse passing off, thus

leaving the Federal Copyright Act as their sole avenue for recovery.  (Defs.' Mot. at 13.)  As explained above, however, Defendants' alleged use of Chapa's signature imagery constitutes passing off, not reverse passing off.

Unfair competition under Cal.Bus. & Prof.Code §§ 17200 *et seq*. "is broadly defined to include 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 943 (C.D. Cal. 1996) (quoting *People v. McKale*, 25 Cal.3d 626, 632 (1979)).  A claim of unfair competition under Cal.Bus. & Prof.Code §§ 17200 *et seq*. "is 'substantially congruent' to a trademark infringement claim under the Lanham Act." *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1146 (9th Cir. 1991) (quoting *International Order of Job's Daughters v. Lindberg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980)).  Since Chapa adequately pleads his Lanham Act claim, his California statutory claim survives as well.

Similarly, California common law prohibits passing off.  *See*, *eg*. *Weinstock, Lubin & Co. v. Marks*, 109 Cal. 529, 538-539 (1895) (finding unfair competition under California common law when the defendant opened a clothing store with a similar name to the plaintiff's popular clothing store); *Summit Tech.* 933 F. Supp. at 943 ("[T]he Court sees no difference between statutory unfair competition and common law unfair competition.").  Because Chapa alleges passing off in violation of the Lanham Act and Cal.Bus. & Prof.Code §§ 17200 *et seq*., his California common law claim is also proper.

For the foregoing reasons, Plaintiffs adequately plead their California statutory and common law claims, at least with respect to Defendants' alleged use of Chapa's source-identifying imagery.  Thus, the Court **DENIES** Moving Defendants' Motion to Dismiss Plaintiffs' fourth and fifth causes of action.

## IV.   CONCLUSION

The Court **DENIES** Moving Defendants' Motion to Dismiss.  (Dkt. No. 48.)

**IT IS SO ORDERED**.